CARL J. LIANO *v.* CITY OF BRIDGEPORT
(AC 18550)

Foti, Schaller and Spear, Js.

---

Argued June 3—officially released September 28, 1999

*Carl J. Liano*, pro se, the appellant-appellee (plaintiff).

*Jason M. Dodge*, for the appellee-appellant (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Carl J. Liano, appeals from the decision of the compensation review board (board) dated June 3, 1998, affirming a decision of a workers' compensation commissioner (commissioner)

dated March 7, 1997. The defendant, the city of Bridge-
port (city), cross appeals from the same decision. The
plaintiff claims that the board improperly (1) deter-
mined that he was not entitled to have his benefits
from 1983 to 1990 adjusted to include overtime and
(2) deprived him of property without due process in
violation of the federal and state constitutions.[1] The
defendant claims that the board improperly (1) deter-
mined that the plaintiff was entitled to overtime earn-
ings after 1990 and (2) calculated the plaintiff's weekly
compensation based on a date of injury of May 16, 1983.
We affirm in part and reverse in part the decision of
the board.

The following procedural history and facts are neces-
sary to a resolution of the appeal and cross appeal. The
plaintiff was employed as a police officer for the city.
He filed a claim on September 18, 1979, based on injuries
related to heart disease or hypertension suffered in the
course of his duties. The commissioner determined that
he suffered an injury that was compensable under the
heart and hypertension statutes, General Statutes (Rev.
to 1979) § 7-433a et seq.,[2] and awarded him benefits

---

[1] While the plaintiff's statement of the issues presented raises his due
process claim, his brief does not address that question. Claims that are not
adequately briefed are considered abandoned. State v. Rodriguez, 44 Conn.
App. 818, 823, 692 A.2d 846, cert. denied, 242 Conn. 902, 697 A.2d 363 (1997).
We therefore do not address the plaintiff's due process claims.

[2] General Statutes (Rev. to 1979) § 7-433b (b) provides: "Notwithstanding
the provisions of any general statute, charter or special act to the contrary
affecting the noncontributory or contributory retirement systems of any
municipality of the state, or any special act providing for a police or firemen
benefit fund or other retirement system, the cumulative payments, not includ-
ing payments for medical care, for compensation and retirement or survivors
benefits under section 7-433c shall be adjusted so that the total of such
cumulative payments received by such member or his dependents or survi-
vors shall not exceed one hundred per cent of the weekly compensation
being paid, during their compensable period, to members of such department
in the same position which was held by such member at the time of his
death or retirement. Nothing contained herein shall prevent any town, city
or borough from paying money from its general fund to any such member
or his dependents or survivors, provided the total of such cumulative pay-

pursuant to General Statutes (Rev. to 1979) § 7-433c on September 30, 1983, with an effective date of injury of September 18, 1979. The commissioner held a subsequent hearing and, in a supplemental finding and award dated November 7, 1986, determined that the plaintiff's compensation rate was to be $204 per week. The commissioner further found that the plaintiff was temporarily totally disabled and ordered the city to make temporary total disability payments until further order of the commissioner. The plaintiff returned before the commissioner and, in a finding and award dated September 13, 1988, was awarded insurance benefits pursuant to General Statutes (Rev. to 1979) § 31-51h. Neither party appealed from any of those decisions.

In August, 1993, the plaintiff filed a complaint with the freedom of information commission requesting documentation regarding police officers' overtime rates

ments shall not exceed said one hundred per cent of the weekly compensation."

General Statutes (Rev. to 1979) § 7-433c provides in relevant part: "[M]unicipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment . . . . The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. . . ."

and pay rates from the city for the years he worked on the police force. The freedom of information commission ordered that the city make those records available to the plaintiff.

On April 26, 1994, the commissioner issued yet another finding and award, determining that the plaintiff's weekly compensation rate was to be readjusted on the basis of a May 16, 1983 date of injury and that it was to include both "inside" and "outside" overtime compensation pursuant to *Szudora* v. *Fairfield*, 214 Conn. 552, 559, 573 A.2d 1 (1990), for 1990 and subsequent years.[3] The commissioner also awarded the plaintiff interest and attorney's fees, but determined that no facts had been presented from which the amount of attorney's fees could be determined.

The defendant appealed to the board and the plaintiff cross appealed. In an opinion dated July 25, 1995, the board upheld the commissioner's findings regarding the date for determining the plaintiff's weekly compensation and dismissed the defendant's appeal. Specifically, the board held that after 1990, overtime earnings should be includable in the 100 percent cap as defined in General Statutes § 7-433b (b), but that the plaintiff was not entitled to a readjustment to include overtime for the years 1983 to 1990 because he had not provided the commissioner with any facts showing that police officers earned overtime wages prior to 1990. The board also remanded the case to the commissioner for a determination of attorney's fees due the plaintiff. The plaintiff appealed and the defendant cross appealed to this court from the board's July 25, 1995 opinion. We dismissed the appeal and cross appeal for lack of a final judgment because there had not been a finding as to the plaintiff's attorney's fees, and our Supreme Court

---

[3] "Inside" overtime is overtime that an officer works for the city. "Outside" overtime is overtime that an officer works at the request of a contractor, whereby the city pays the officer's wages and is reimbursed by the contractor.

denied the plaintiff's petition for certification. *Liano* v. *Bridgeport*, 238 Conn. 906, 679 A.2d 1 (1996).

The plaintiff again returned to the commissioner, this time seeking an award of attorney's fees. The commissioner awarded the plaintiff $6590 in attorney's fees in a finding and award dated March 7, 1997. The defendant appealed to the board,[4] which remanded the issue of attorney's fees to the commissioner on June 3, 1998, for a finding of reasonableness. The board also refused to revisit the redetermination of the plaintiff's date of injury and the recalculation of his weekly compensation rate, stating that its July 25, 1995 opinion was the law of the case.

On June 23, 1998, the plaintiff filed this appeal from the board's June 3, 1998 decision. The defendant then filed its cross appeal. The defendant filed a motion to dismiss the plaintiff's appeal on July 1, 1998. We granted the defendant's motion to dismiss, limited to the issue of attorney's fees, for lack of a final judgment in light of *Benvenuto* v. *Mahajan*, 245 Conn. 495, 715 A.2d 743 (1998). As a result of that dismissal, the defendant's cross appeal on the same issue also was dismissed. We also, sua sponte, struck that portion of the plaintiff's brief addressing the issue of attorney's fees.

In this appeal, the plaintiff claims that the board improperly affirmed the commissioner's finding that he was not entitled to an adjustment of his weekly

---

[4] The defendant's amended reasons for appeal to the board presented, inter alia, the following issues:

"V. Whether the compensation review board in its decision of July 25, [1995], erred in awarding the [plaintiff] a compensation rate based on the 26 weeks of earnings prior to May 16, 1983, when the evidence revealed that the [plaintiff] initially became disabled in 1979.

"VI. Whether the compensation review board in its decision of July 25, [1995], erred in concluding that after April of 1990, 'outside overtime' earnings of the City of Bridgeport policemen should be includable in the 'cap' as defined under [§ 7-433b (b)]."

compensation to include overtime wages from the years 1983 to 1990. We are not persuaded. The defendant claims in its cross appeal that the commissioner improperly determined that the plaintiff was entitled to overtime compensation for the years 1990 and following, and that the plaintiff's date of injury was improperly changed from September 18, 1979, to May 16, 1983. We agree. The dispositive issue of both the appeal and cross appeal is whether the commissioner's finding and award of November 7, 1986, was final at the time our Supreme Court decided *Szudora*.

Our standard of review in workers' compensation cases is well settled. "[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539, 542 A.2d 1118 (1988).

We first address the question of whether the plaintiff's case was pending at the time our Supreme Court decided *Szudora* v. *Fairfield*, supra, 214 Conn. 552, or whether it was a final judgment that was modifiable only in the situations indicated in General Statutes § 31-315.[5] In *Szudora*, the court held that the 100 percent

[5] General Statutes § 31-315 provides: "Any award of, or voluntary agreement concerning, compensation made under the provisions of this chapter or any transfer of liability for a claim to the Second Injury Fund under the provisions of section 31-349 shall be subject to modification in accordance with the procedure for original determinations, upon the request of either party or, in the case of a transfer under section 31-349, upon request of the custodian of the Second Injury Fund, whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement, award or transfer in order properly to carry out the spirit of this chapter. The commissioner shall also have the

cap in § 7-433b (b) "required consideration not only of base pay but also of overtime payments to similarly situated working members of the defendant's police department." *Szudora* v. *Fairfield,* supra, 554. The plaintiff relies on *Szudora* to support his position that the commissioner correctly adjusted his post-1990 compensation to include overtime and incorrectly failed to include overtime for the years 1983 to 1990. Our Supreme Court recently decided *Marone* v. *Waterbury,* 244 Conn. 1, 707 A.2d 725 (1998) (en banc), which presents facts similar to those in the present case. "The plaintiff, Vincent Marone, a Waterbury police officer, was diagnosed on September 9, 1980, as suffering from hypertension . . . . He reached maximum medical improvement on April 15, 1982, and retired on that date . . . . On July 14, 1983, the plaintiff was awarded disability benefits pursuant to § 7-433c . . . . On June 21, 1994, the plaintiff requested a recalculation, in accordance with *Szudora,* of his weekly compensation . . . ." Id., 4. Marone's request was denied by the commissioner, which decision was affirmed by the board because (1) *Szudora* did not apply retroactively, (2) the action was no longer pending and (3) such a result would be unduly burdensome to municipalities. Id., 5. The board, however, held that *Szudora* could be applied prospectively. Id.

"Whether a judgment is final depends upon the governing statute. '[T]he line that separates lower court judgments that are pending on appeal (or may still be appealed), from lower court judgments that are final, is determined by statute . . . . Having achieved finality . . . a judicial decision becomes the last word of the

same power to open and modify an award as any court of the state has to open and modify a judgment of such court. The compensation commissioner shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon, during the whole compensation period applicable to the injury in question."

judicial department with regard to a particular case or controversy . . . .' *Plaut* v. *Spendthrift Farm, Inc.*, 514 U.S. 211, 227, 115 S. Ct. 1447, 131 L. Ed. 2d 328 (1995)." *Marone* v. *Waterbury*, supra, 244 Conn. 12. As in *Marone*, the plaintiff in the present case began receiving benefits pursuant to the 1986 supplemental finding and award. The present case is controlled by our Supreme Court's decision in *Marone*. Because neither party in the present case appealed from the original 1983 finding and award, the 1986 supplemental finding and award or even the 1988 finding and award, those decisions became final after the appeal periods expired, well before *Szudora* was decided.

We next decide whether the initial award was subject to modification pursuant to § 31-315. We conclude that it was not. Again, *Marone* governs this case. "The power of the commission to hear modification requests is determined by the provisions of § 31-315. 'It is clear that an administrative body must act strictly within its statutory authority, within its constitutional limitations and in a lawful manner.' *Waterbury* v. *Commission on Human Rights & Opportunities*, 160 Conn. 226, 230, 278 A.2d 771 (1971). The parties to a claim cannot, by agreement, endow the commission with the authority to decide that claim. *Jester* v. *Thompson*, 99 Conn. 236, 238, 121 A. 470 (1923). Additionally, a decision of an administrative agency cannot be 'set aside upon the sole ground that it is erroneous in matter of law, except by a court exercising appellate or revisory jurisdiction, unless authorized by statute, or unless the error is one going to the jurisdiction.' . . . *Kalinick* v. *Collins Co.*, [116 Conn. 1, 8, 163 A. 460 (1932)]. . . .

"Section 31-315 allows the commission to modify an award in three situations. First, modification is permitted where 'the incapacity of an injured employee has increased, decreased or ceased, or . . . the measure of dependence on account of which the compensation

is paid has changed . . . .' Second, the award may be modified when 'changed conditions of fact have arisen which necessitate a change of [the award].' . . . Third, '[t]he commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court.' This provision extends the commission's power to open and modify judgments to cases of accident; *Hayden* v. *Wallace & Sons Mfg. Co.*, 100 Conn. 180, 188, 123 A. 9 (1923); to mistakes of fact; *Fair* v. *Hartford Rubber Works Co.*, 95 Conn. 350, 355, 111 A. 193 (1920); and to fraud; *Grabowski* v. *Miskell*, 97 Conn. 76, 84, 115 A. 691 (1921); but not to mistakes of law. *Kalinick* v. *Collins Co.*, supra, 116 Conn. 4–5. The final clause of § 31-315 allows the commission to retain jurisdiction over claims during the entire compensable period. This provision, however, does not independently confer authority to modify awards for reasons not otherwise enumerated in § 31-315. Id., 7–8." *Marone* v. *Waterbury*, supra, 244 Conn. 16–17. The plaintiff in the present case did not allege that he met any of the criteria set forth in § 31-315 to warrant modifying his award. He relies solely on *Szudora*.

The court in *Marone* held that *Szudora* was a new interpretation of the law and, therefore, could be applied only to pending cases. Id., 18. Because the plaintiff's case was not pending at the time of the *Szudora* decision, § 31-315 does not permit the commission to modify the plaintiff's award on the basis of the definition of weekly compensation set forth in *Szudora*. Furthermore, because the plaintiff's award was a final judgment, he was not entitled to have the commission adjust his weekly compensation on the basis of a date of injury of May 16, 1983, because he did not show that he met the requirements of § 31-315.

On the plaintiff's appeal, the decision of the compensation review board is affirmed with respect to that

portion determining that the plaintiff is not entitled to a recalculation of the cap pursuant to § 7-433b (b) to include overtime payments for the years 1983 to 1990. On the defendant's cross appeal, the decision of the compensation review board is reversed with respect to those portions that modify the original date of injury and determine that the plaintiff was entitled to include overtime wages in the computation of the cap pursuant to § 7-433b (b) for the years 1990 and following. The case is remanded to the board with direction to remand the matter to the commissioner for the recalculation of the plaintiff's weekly compensation based on a September 18, 1979 date of injury and in a manner not inconsistent with this opinion.

In this opinion the other judges concurred.