[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal from a decision of the defendant, State of Connecticut, Department of Social Services ("DSS"), brought pursuant to General Statutes § 4-183 et seq., under the Uniform Administrative Procedure Act ("UAPA."). The plaintiff had contested DSS' and the City of New Britain's right to payment in reimbursement for assistance rendered the plaintiff to be taken from the plaintiff's retroactive Supplemental Security Income ("SSI") payment. This appeal to the Superior Court followed.
The factual background in this matter is as follows. The plaintiff received federally reimbursable Interim Assistance ("Interim Assistance") in the form of General Assistance ("GA") benefits from the City of New Britain between February 13, 1996 and March 31, 1997, and State Administered General Assistance ("SAGA") benefits between April 1, 1997 and September 30, 1997. The plaintiff received the SAGA assistance after the GA program was consolidated and its administration transferred to DSS. The plaintiff stopped receiving Interim Assistance when he was awarded SSI benefits in September, 1997. (Return of Record ("ROR"), pp. 12-13.) SSI is a federal income maintenance program for those who are aged, blind or disabled and who do not have a sufficient work history to qualify for Old Age, Survivors and Disabilities Insurance ("OASDI") benefits (Connecticut State Department of Income Maintenance, General Assistance Policy Manual ("GAPM"), Chapter I, VIII, C.2., p. 117 (ROR, p. 43.)) Known as Social Security, OASDI is a federal program for the retired and disabled, their qualified dependents, and the survivors of deceased wage earners. Only those who have worked enough quarters and have paid social security taxes are eligible. (GAPM, Chapter I, VIII, C.1., pp. 115-116 (ROR, pp. 41-42.)) Interim Assistance is assistance from state or local funds to an SSI eligible individual for meeting basic needs during the period such individual's SSI application is pending. (ROR, p. 11.) Pursuant to Title 42, United States Code, § 1383 (g)(1), a state furnishing such assistance may recoup the assistance it pays for any month in the period for which both SSI and Interim Assistance CT Page 8722 payments were made from the recipient's retroactive SSI check. (ROR, pp. 11, 14.)
Under the GA program, towns provided financial and medical assistance to residents who lacked the means to support themselves. General Statutes § 17b-116 (a). As of April 1, 1997, the state, rather than individual towns, began administering the program through DSS in the fourteen towns within which the DSS regional or district offices are located. General Statutes § 17b-111. This program provides assistance to needy persons who do not qualify for federal categorical assistance, such as SSI or Aid to Families With Dependent Children. Moore v. Ganim, 233 Conn. 557, 561, n. 5 (1995).
Eligibility requirements for GA include assets equal to or below $250, and income below specified levels. Additionally, all applicants are required to apply for federally funded programs for which they may be eligible. For example, applicants must first pursue SSI assistance. General Statutes § 17b-119; Moore v. Ganim, supra, 233 Conn. 561 n. 5.
Under the GAPM, recipients of SSI are not eligible for GA benefits. Once the Social Security Administration (SSA) determines a GA recipient eligible for SSI benefits, GA benefits discontinue beginning on the date SSI payments are received. (GAPM, Chapter I, VIII, C.2.a., p. 117 (ROR, p. 43.))
However, an SSI applicant awaiting a decision on his application may receive GA benefits, pending the outcome of the application. In order to do so, such applicant must assign his interest in any retroactive SSI check to the state. (GAPM, Chapter I, VIII, C.2.b., p. 118 (ROR, p. 44.) The assignment form, W-650, authorizes the SSA to release the retroactive SSI check to DSS where the SSA awards the recipient SSI benefits. See Title 42, United States Code, § 1383(g)(1). DSS then reimburses any assisting town for aid given the recipient while the SSI application was pending. (GAPM, Chapter I, XXV, C.2. (ROR, p. 75.))
As a condition of his receipt of Interim Assistance payments, the plaintiff, Edward A. Lucas, signed a form W-650, "Authorization for Reimbursement to the State of Connecticut From SSI Retroactive Payment," on February 28, 1996. (ROR, p. 10.) The form W-650 provided in part:
 I request that General Assistance be provided to me during the period in which my S.S.I. application is pending.
 In consideration of the prompt payment of General CT Page 8723 Assistance paid to me by the town of N.B., I hereby authorize the Social Security Administration to make the initial payment of Social Security Income Benefits which I am determined to be eligible to receive, to the State of Connecticut.
 I understand that since General Assistance is not financed with federal funds, it shall be considered interim assistance.
 I further authorize the State of Connecticut to deduct from my initial SSI payment an amount sufficient to reimburse the town of N.B. for assistance paid to me as stated below.
 Initial Eligibility Claim town financial aid beginning with the day of the month for which I am found eligible for an SSI payment and ending with the month my SSI payments begin.
or
 Post Eligibility Claim town financial aid beginning with the day of the month for which my SSI payments are reinstated after a period of suspension or termination and ending with the month my payments resume.
 After making such deduction, the State shall pay the balance, if any, to me within ten working days from the day the check is received from SSA.
(ROR, p. 10.)
On October 21, 1997, DSS received a check from the SSA in the amount of $6,221.12 for the plaintiff (ROR, p. 8.) Thereafter, DSS received the City of New Britain's bill for Interim Assistance reimbursement in the amount of $4,450. Additionally, the plaintiff had received $2,100 in benefits under the SAGA program. (ROR, pp. 15-19.) On November 7, 1997, DSS reimbursed the City of New Britain $4,450 and the SAGA program $1,771.12. (ROR, pp. 8, 20-23.) DSS notified the plaintiff of these reimbursements from his retroactive SSI check and informed him that no amount was left to be forwarded to him. (ROR, pp. 21-22.)
The plaintiff appealed to the Office of Administrative Hearings and Appeals of DSS on October 30, 1997, contesting the City of New Britain's CT Page 8724 and DSS' right to reimbursement. Jenifer M. Fox, a fair hearing officer for DSS, conducted a hearing on February 6, 1997, at which the issue was whether the City of New Britain and DSS were entitled to exercise their rights under the assignment which the plaintiff had executed in return for Interim Assistance under the GA and SAGA programs. Subsequent to hearing the evidence presented, the hearing officer found against the plaintiff and in favor of the City of New Britain and DSS.
Thereafter, the plaintiff brought this administrative appeal to the Superior Court in a timely fashion.
This court's "review of an administrative appeal is limited. Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial `rubber stamping' of an agency's decisions. Connecticut Light Power v.Dept. of Public Utilities Control, 219 Conn. 51, 57, 591 A.2d 1231
(1991); Woodbury Water Co. v. Public Utilities Commission, 174 Conn. 258,260, 386 A.2d 232 (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. Inland WetlandsAgency, 226 Conn. 579, 587, 628 A.2d 1286 (1993); Lieberman v. StateBoard of Labor Relations, 216 Conn. 253, 262, 579 A.2d 505 (1990); Baerstv. State Board of Education, 34 Conn. App. 567, 571, 642 A.2d 76, cert. denied, 230 Conn. 915, 645 A.2d 1018 (1994)." (Internal quotation marks omitted.) Cabasquini v. Commissioner of Social Services, 38 Conn. App. 522,525-26, cert. denied, 235 Conn. 906 (1995).
A court "must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Ottochian v. Freedom of InformationCommission, 221 Conn. 393, 397, 604 A.2d 351 (1992). Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in lightof the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . .New Haven v. Freedom of Information Commission, 205 Conn. 767, 774,535 A.2d 1297 (1988)." (Emphasis in original; internal quotation marks omitted.) Perkins v. Freedom of Information Commission, 228 Conn. 158,164-65 (1993).
In the present case, the pro se plaintiff raises a number of issues. The plaintiff has failed to brief these issues and to cite legal authority, and, therefore, these issues could be considered abandoned. CT Page 8725Liano v. City of Bridgeport, 55 Conn. App. 75, 85 n. 1, cert. denied,252 Conn. 909 (1999).
It should be noted that the plaintiff did not dispute the receipt of the GA and SAGA benefits for which reimbursement was claimed before the hearing officer, nor does the plaintiff dispute the receipt of those funds here.
The plaintiff does claim that he was not advised of his right to refuse to authorize reimbursement and that he was coerced into signing the reimbursement forms. The short answer to these arguments by the plaintiff is that the plaintiff would not have received the $4,450 from the City of New Britain (which was reimbursed), nor the $2,100 from the State of Connecticut (of which $1,771.12 was reimbursed), had the plaintiff not agreed to reimburse those entities from his SSI check. Under state and federal law, the plaintiff would not have qualified for that financial assistance without a reimbursement agreement.
The hearing officer's conclusion that DSS' recoupment of the financial assistance to the plaintiff from his retroactive SSI payment was proper is fully supported by the law. General Statutes § 17b-119 (a)(2) provides: "The full amount of any interim assistance reimbursement received by the state shall be applied to reduce any obligation owed to the town by such recipient." General Statutes § 17b-128 provides in pertinent part:
 (a) any person who receives relief from any town or municipality of this state shall be liable to reimburse such town or municipality for army monies or relief received. Section 52-576 shall not be a bar to a recovery under this section.
 (b) any town that overpays a person receiving financial assistance . . . shall recover such overpayment from such persons' ongoing assistance.
Clearly these statutes require a recipient of GA to reimburse the assisting town. Cabasquini v. Commissioner of Social Services, supra,38 Conn. App. 522.
The plaintiff also contends that his ex-wife was responsible for the amounts paid to him in GA and SAGA benefits, and that DSS should look to his ex-wife for reimbursement. However, the plaintiff alone signed the instrument assigning his retroactive SSI payment to the state. The plaintiff assigned only his own retroactive SSI payment to the state, not that of his ex-wife. Additionally, DSS had no assignment of interest from CT Page 8726 the plaintiff's ex-wife, nor was any evidence introduced that the plaintiff received interim assistance as part of an assistance unit which included his ex-wife. Thus, the plaintiff's claim that DSS should have sought payment from his ex-wife has no foundation in the record and is without merit.
The plaintiff also argues that any obligation he owed the state as a result of receiving Interim Assistance was eliminated as a result of his 1997 bankruptcy discharge. The hearing officer concluded:
 The documents presented by the appellant from U.S. Bankruptcy Court do not appear to constitute the entire file maintained by the Bankruptcy Court Clerk and failed to establish that the obligation to the city/state was scheduled and notice provided to the State. The appellant has not clearly and convincingly proven that his debts to the city/state were discharged by the Court.
(ROR, p. 4.)
The hearing officer's conclusions in this regard are fully supported by the record. The plaintiff failed to carry his burden of presenting evidence that his obligation to the city and the state was discharged in United States Bankruptcy Court.
Additionally, DSS correctly argues that the state and the city had the right under General Statutes §§ 17b-119, 17b-122 and 17b-128 to recoup amounts paid to the plaintiff in Interim Assistance. That right to recoup survived a debtor's bankruptcy discharge.
Recoupment is an equitable defense which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff which arose out of the same transaction. In the matter ofHolford, 896 F.2d 176, 178 (5th Cir. 1990). "Often, recoupment seeks to avoid the unjust result that would occur if a debtor who has been overpaid pre-petition by a party in a contract is permitted post-petition to make a claim under the contract against that party without regard to the overpayment it has received." In re McMahon, 129 F.3d 93, 96 (2nd
Cir. 1997).
In the present case, the plaintiff claims entitlement to the $6,221.12 in retroactive payment which the SSA remitted to DSS in reimbursement for Interim Assistance rendered to the plaintiff. DSS asserts its right to recoup that amount. The right to recoupment arose out of the same transaction as the plaintiff's claim. That transaction was the CT Page 8727 plaintiff's contract with the city and the state to furnish him with Interim Assistance while his SSI application was pending, in consideration for which assistance he assigned his retroactive SSI payment to the state. Consistent with that contract, the SSA sent the plaintiff's retroactive SSI check to DSS. Under the recoupment doctrine of bankruptcy law, DSS' right to deduct the amount of assistance the city and the state paid to the plaintiff from the retroactive amount was unaffected by his bankruptcy discharge. Accordingly, the plaintiff's claim that his bankruptcy discharge nullified that right is unavailing. In any event, because the plaintiff failed to present evidence sufficient to support his argument that the monies he received in general assistance from the town and the state were discharged in bankruptcy, the DSS hearing officer's conclusion that the plaintiff had failed to sustain his burden of proof will not be disturbed here.
Finally, the plaintiff argues that the hearing officer violated General Statutes § 17b-61 by not issuing her decision within ninety days of the hearing. (Plaintiff's Brief, pp. 2-3.) General Statutes § 17b-61
provides in pertinent part:
 (a) Not later than sixty days after such hearing, or three business days if the hearing concerns a denial of or failure to provide emergency housing, the commissioner or his designated hearing officer shall render a final decision based upon all the evidence introduced before him and applying all pertinent provisions of law, regulations and departmental policy, and such final decision shall supercede the decision made without a hearing, provided final definitive administrative action shall be taken by the commissioner or his designee within ninety days after the request of such hearing pursuant to § 17b-60. Notice of such final decision shall be given to the aggrieved person by mailing him a copy thereof within one business day of its rendition. Such decision after hearing shall be final except as provided in subsections (b) and (c) of this section.
Here, the plaintiff claims that DSS violated the statute, although the plaintiff fails to specify what remedy he seeks, other than a general claim that DSS erroneously and illegally withheld his retroactive social security benefits check.
The hearing officer heard the plaintiff's appeal on February 6, 1997, and issued her decision on May 27, 1998. The issue is whether the statute required the hearing officer to render her decision within sixty days or CT Page 8728 not at all. The answer depends on whether the word "shall," as used in the statute, is mandatory or directory.
The general rule is that the word "shall" is mandatory, not directory.Jones v. Civil Service Commission, 175 Conn. 504, 509-10 (1978). However, the use of the word "shall" does not always indicate that a provision is mandatory. Yanni v. DelPonte, 31 Conn. App. 350, 353 (1993). In Katz v. Commissioner of Revenue Services, 234 Conn. 614, 617 (1995), the Connecticut Supreme Court stated:
 The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words.
(Internal quotation marks omitted.)
Here, § 17b-61 is silent as to the effect of a decision rendered beyond the sixty day period. No penalty is imposed. The statute does not provide that the failure to render a decision within the specified time entitles the person to an automatic granting of the relief sought. The statute appears to be designed to promote convenience, efficiency and dispatch in the rendering of decisions. Indeed, the court in ARI, Inc.v. Department of Income Maintenance, Superior Court, judicial district of Stamford/Norwalk, Docket No. CV 92 0123733 (March 2, 1994, Maloney, J.) (15 Conn.L.Rptr. 306) held that General Statutes § 17-2b(a), now § 17b-61, contained directory rather than mandatory time limitations, when unaccompanied by federal time requirements.
There are no federal time requirements applicable to this case. However, General Statutes §§ 17b-119, 17b-122 and 17b-128 provide that the right to recoup amounts paid in Interim Assistance is not subject to any time limitation. As applied to this case, § 17b-61 is directory, not mandatory. The hearing officer's failure to render a decision within sixty days did not compromise the purpose of the statute, nor has the plaintiff shown that the statute's purpose of promoting dispatch in the rendering of decisions was in any way breached. Here, the plaintiff was provided with timely Interim Assistance and is now receiving SSI and OASDI CT Page 8729 benefits. The issue here is the plaintiff's obligation to repay the state and the city for the Interim Assistance rendered to him. That repayment obligation is mandated by statute and should not be frustrated by a non-prejudicial delay in deciding the plaintiff's claim that he was no longer obligated to fulfill the contract he entered into when he applied for and received Interim Assistance.
Finally, another remedy was available to the plaintiff. General Statutes § 4-180 provides that in any case where a party to an administrative proceeding is frustrated by a delay in the decision making process, that party may petition this court for an order requiring the agency to render its decision forthwith. Here, the plaintiff failed to take advantage of this remedy. By failing to do so, the plaintiff waived any right he had to contest the hearing officer's decision on the ground of timeliness. Pet v. Department of Health Services, 228 Conn. 651, 674
(1994).
Based on all the foregoing, the decision of the hearing officer was fair and equitable under the circumstances, and fully supported by the evidence in the record.
Accordingly, this administrative appeal therefrom is dismissed.
Michael Hartmere, Judge