******************************************************

    The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

    All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

    The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

THE OFFICE CONDOMINIUM ASSOCIATION,
INC. *v.* MARGUERITE ROMPRE ET AL.
(AC 41458)

DiPentima, C. J., and Lavine and Eveleigh, Js.

*Syllabus*

The plaintiff condominium association sought to foreclose a statutory lien
    for, inter alia, unpaid common charges on a condominium unit owned
    by the defendant M, and, thereafter, M filed a counterclaim. The trial
    court granted M's motion for summary judgment on the foreclosure
    complaint and M amended her counterclaim to add counts, including
    vexatious litigation and slander of title. The condominium association
    filed a motion for summary judgment on the counterclaim, which the
    trial court granted on all counts except the count for attorney's fees
    pursuant to statute (§ 47-278), a provision of the Common Interest Own-
    ership Act. Thereafter, M and the defendant B appealed to this court.
    *Held* that this court lacked subject matter jurisdiction over the appeal
    and, accordingly, the appeal was dismissed; the appeal was not taken
    from a final judgment as the trial court left a substantive claim unre-
    solved, the claim for attorney's fees having been based on alleged under-
    lying violations of the Common Interest Ownership Act that required
    the court to conduct a hearing on the merits to determine whether
    any such violation occurred during the foreclosure and not simply the
    amount of attorney's fees to be awarded after a violation has been found,
    and, therefore, a count remained open following the court's ruling on
    the condominium association's motion for summary judgment.

Argued October 24, 2019—officially released March 10, 2020

*Procedural History*

Action to foreclosure a statutory lien for, inter alia,
unpaid common charges on a condominium unit owned
by the named defendant, and for other relief, brought
to the Superior Court in the judicial district of New
Britain and transferred to the judicial district of Hart-
ford, where the named defendant filed a counterclaim;
thereafter, the court, *Hon. Joseph M. Shortall*, judge
trial referee, granted the named defendant's motion for
summary judgment as to the complaint; subsequently,
the court, *Moukawsher, J.*, granted in part the plaintiff's
motion for summary judgment as to the amended coun-
terclaim and rendered judgment thereon, from which
the named defendant et al. appealed to this court.
*Appeal dismissed.*

*Taryn D. Martin*, with whom, on the brief, was *Robert
A. Ziegler*, for the appellants (named defendant et al.).

*Keith P. Sturges*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendants Marguerite Rompre and Bertrand Rompre[1] appeal from the grant of summary judgment in favor of the plaintiff, The Office Condominium Association, Inc. On appeal, the defendants raise a number of challenges to the trial court's decision.[2] We do not address these claims, however, because we conclude that the defendants' appeal was not taken from a final judgment. Accordingly, we dismiss the appeal.

The following facts and procedural history are relevant to the disposition of this appeal. On October 22, 2013, the plaintiff commenced the underlying foreclosure action against the defendants[3] for failing to pay various costs associated with ownership of a condominium unit, including common charges, late fees, fines, and interest. The unit at issue is located in Building B of The Office Condominium at 325 Main Street, Farmington. On November 20, 2014, Marguerite filed an answer denying the allegations of the complaint. She also filed a counterclaim alleging violation of the Connecticut Common Interest Ownership Act, General Statutes § 47-200 et seq., breach of contract, breach of the implied duty of good faith and fair dealing, negligence, and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110 et seq. She also sought appointment of a receiver. On June 9, 2015, Marguerite filed a motion for summary judgment as to the foreclosure complaint in which she argued that the plaintiff failed to comply with General Statutes § 47-258 (m) (1)[4] and (2)[5] and, therefore, could not foreclose the property. On July 15, 2015, the court, *Hon. Joseph M. Shortall*, judge trial referee, granted Marguerite's summary judgment motion.

Following the granting of the motion, on September 22, 2015, Marguerite filed an amended counterclaim and alleged three additional counts.[6] These additional counts included vexatious litigation, breach of fiduciary duty and slander of title. On December 4, 2015, Marguerite filed a motion to cite Bertrand in as a counterclaim plaintiff to prosecute the counterclaim. On March 8, 2016, the court granted the motion to cite in Bertrand.

On January 2, 2018, the plaintiff filed a motion for summary judgment as to the counterclaim filed by Marguerite. On February 7, 2018, the court, *Moukawsher, J.*, granted the motion in favor of the plaintiff on all counts except the count for attorney's fees pursuant to General Statutes § 47-278 (a), a provision of the Common Interest Ownership Act.[7] In addressing that count, the court concluded that the statute "does provide [that] 'the court may' award attorney's fees as part of winning a claim to 'enforce a right granted or an obligation imposed' under [the Common Interest Ownership Act]. Thus, any fee award is for the court to decide, not a jury.

And if the language of the statute isn't clear enough, in 2002 the Appellate Court affirmed in *Original Grasso Construction Co.* v. *Shepherd*, [70 Conn. App. 404, 419, 799 A.2d 1083, cert. denied, 261 Conn. 932, 806 A.2d 1065 (2002)] that the question of whether to award statutory attorney's fees is a question of law for the court to decide.

"So if the [plaintiff] foreclosed in violation of the statute, why can't its victim recover the fees it spent to defend against it? Must you prove bad faith? The statute doesn't say anything of the kind. Were the violations somehow technical? Would that matter? The statute doesn't say anything on that score either. It merely says 'the court *may* award reasonable attorney's fees and costs.' And must those reasonable attorney's fees only relate to the counterclaim as opposed to the underlying claim?

"The counterclaim *is* about beginning the underlying [foreclosure] in violation of the statute, so either way the violations are pertinent. In any case, the question is for the court's discretion and the court finds enough dispute over the facts and how to apply the law to them to merit a hearing on whether to exercise its discretion to award fees and, if so, the amount of any fees. At this hearing, the parties may present appropriate testimony, written evidence and arguments." (Emphasis in original; footnote omitted.) As the court noted, a claim under the Common Interest Ownership Act requires that a violation of the act occurred during a foreclosure. The court determined that there was sufficient disagreement about the facts to require a subsequent hearing to establish whether a violation of the act had occurred. Thus, this count under the Common Interest Ownership Act remained open following the court's ruling on the plaintiff's motion for summary judgment. Accordingly, there was no final judgment. See Practice Book § 61-2 (providing that judgment is final when judgment has been rendered on entire counterclaim).

Prior to this appeal, Marguerite filed a motion for written determination of finality for the purposes of appeal under Practice Book § 61-4 (a),[8] demonstrating an awareness that a final judgment had not been rendered by the trial court. The court, *Moukawsher, J.*, granted the motion. Marguerite,[9] however, did not file a motion seeking permission from the Chief Judge of this court to file an appeal under Practice Book § 61-4 (b).[10] The defendants' appeal to this court followed. Before oral argument, this court notified the parties "to be prepared to address at oral argument whether the appeal should be dismissed for lack of a final judgment on the ground that the trial court's judgment did not dispose of the entire counterclaim."

We begin by setting forth the applicable standard of review and legal principles that guide our review. "When judgment has been rendered on an entire com-

plaint . . . such judgment shall constitute a final judgment. . . . As a general rule, however, a judgment that disposes of only a part of a complaint is not final, unless it disposes of all of the causes of action against the appellant." (Citation omitted; internal quotation marks omitted.) *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 717, 183 A.3d 1164 (2018). "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law [and, therefore] our review is plenary. . . . Neither the parties nor the trial court . . . can confer jurisdiction upon [an appellate] court. . . . The right of appeal is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . It is equally axiomatic that, except insofar as the legislature has specifically provided for an interlocutory appeal or other form of interlocutory appellate review . . . appellate jurisdiction is limited to final judgments of the trial court." (Citation omitted; internal quotation marks omitted.) *Ledyard* v. *WMS Gaming, Inc.*, 330 Conn. 75, 84, 191 A.3d 983 (2018); see also General Statutes § 52-263.

On appeal, the defendants argue that all that is left to be resolved in this case is the amount of attorney's fees to be awarded under the Common Interest Ownership Act. Thus, they argue that, pursuant to *Paranteau* v. *DeVita*, 208 Conn. 515, 523, 544 A.2d 634 (1988), their appeal is from a final judgment. This case, however, does not fall within the parameters of *Paranteau* because the Common Interest Ownership Act count remains unresolved. It is well settled that "a judgment on the merits is final for purposes of appeal even though the recoverability or amount of attorney's fees for the litigation remains to be determined." (Internal quotation marks omitted.) *Ledyard* v. *WMS Gaming, Inc.*, supra, 330 Conn. 85. This bright line rule applies even to cases " 'in which the application of the bright line [rule] would mean that an attorney's fees award that would otherwise be considered integral to the judgment on the merits would nevertheless be severable from that judgment for purposes of finality,' "; id., 87; such as in foreclosure actions. See also *Paranteau* v. *DeVita*, supra, 208 Conn. 522–23.

Our Supreme Court in *Hylton* v. *Gunter*, 313 Conn. 472, 97 A.3d 970 (2014), "conclude[d] that an appealable final judgment existed when all that remained for the trial court to do was determine the amount of the attorney's fees comprising the common-law punitive damages that it previously had awarded." Id., 487. Similarly, our Supreme Court in *Ledyard* determined that there was an appealable final judgment when "[a]ll that remained to be done after the trial court's decision was for the plaintiff to file a motion for attorney's fees, which it did, and for the court to conduct a hearing on that motion to determine the amount of those fees

. . . ." *Ledyard* v. *WMS Gaming, Inc.*, supra, 330 Conn. 89.

Here, unlike in *Hylton* or *Ledyard*, more than a determination of the amount of attorney's fees remained to be done. The court here left a substantive claim unresolved. As noted previously in this opinion, the court explained that the claim for attorney's fees was based on alleged underlying violations of the Common Interest Ownership Act. The court determined that there were "enough disputes over the facts and how to apply the law to them to merit a hearing on *whether to exercise its discretion to award fees* and, if so, the amount of any fees." (Emphasis added.) Therefore, the court still must determine whether a violation of the Common Interest Ownership Act occurred during the foreclosure and not simply the amount of attorney's fees to be awarded after a violation has been found. This requires, as the court concluded, a subsequent hearing on the merits. Thus, contrary to the defendants' argument, this case does not fall within the rule announced in *Paranteau* and its progeny. Accordingly, this court lacks subject matter jurisdiction over the appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] For clarity, we refer to the defendants Marguerite Rompre and Bertrand Rompre by their first names where appropriate throughout this opinion. Although additional defendants were named in the complaint, they are not parties to this appeal.

[2] The defendants claim: (1) "[t]he trial court erred when [it] misapplied the burden of proof in its review of the summary judgment motion and objection and further failed to view the evidence in a light most favorable to the nonmoving party"; (2) "[t]he trial court further erred in granting summary judgment on the first counterclaim wherein it overlooked and misinterpreted evidence, especially as it related to damages, misinterpreted the [Common Interest Ownership Act, General Statutes § 47-200 et seq.] (CIOA), and rendered a decision that was not legally or logically correct"; (3) "[t]he trial court further erred in granting summary judgment on the vexatious litigation counterclaim, (a) in finding there was probable cause when there clearly was not, (b) in relying upon the flawed argument that the bald assertion of reliance upon the advice of counsel is an absolute defense without any evidence to satisfy the elements of the defense, and (c) in granting the plaintiff's motion as it pertained to vexatious litigation, sua sponte, when it had no authority to do so"; (4) "[t]he trial court further erred when grant[ing] summary judgment on the breach of contract counterclaim when the declaration, bylaws and CIOA, that have been legally established to be a contract between the association and unit owner were the elements of a cause of action were established and the duties breached resulting in damages"; (5) "[t]he trial court further erred in granting summary judgment on the breach of implied duty of good faith and fair dealing where it misinterpreted that bad faith can be established through evidence of neglect or refusal to fulfill a duty or contractual obligation, and can further be established by inaction"; (6) "[t]he trial court further erred in granting summary judgment on the negligence claim, in misconstruing and overlooking the evidence before the court, misinterpreting the statutory authorization to award attorney's fees and costs, and failed to view the evidence in the light most favorable to the nonmoving party"; (7) "[t]he trial court further erred in granting summary judgment on the breach of fiduciary claim, in misreading and overlooking the evidence before the court, misinterpreting the statutory authorization to award attorney's fees and costs, and failed to view the evidence in the light most favorable to the nonmoving party"; (8) "[t]he trial court further erred in granting summary judgment on the slander of title claim, in misconstruing and overlooking the evidence before

the court as to the filing lacked good faith, misinterpreting the statutory authorization to award attorney's fees and costs, failing to view the evidence in the light most favorable to the nonmoving party"; (9) "[t]he trial court further erred in granting summary judgment on the claim brought pursuant to General Statutes § 47-278, wherein it misinterpreted the statutory language, which proscribes that other damages are deemed collectable, aside from attorney's fees and costs when a unit owner seeks to enforce a right granted or obligation imposed by the declaration, bylaws and/or CIOA"; (10) "[t]he trial court further abused its discretion in granting the plaintiff permission to file for summary judgment when a trial was scheduled, with the knowledge that it had just recently denied discovery motions filed by the defendants to compel discovery, and barred discovery even further in its standing orders all to the prejudice of the defendants."

[3] The plaintiff filed the underlying foreclosure action against both Marguerite Rompre and Bertrand Rompre. Bertrand, however, was not an owner of the property. Bertrand was subsequently removed by the plaintiff. The parties were asked by this court to address the issue of Bertrand's standing at oral argument. In light of our dismissal of the entire appeal, we do not address this issue.

[4] General Statutes § 47-258 (m) (1) provides: "An association may not commence an action to foreclose a lien on a unit under this section unless: (A) The unit owner, at the time the action is commenced, owes a sum equal to at least two months of common expense assessments based on the periodic budget last adopted by the association pursuant to subsection (a) of section 47-257; (B) the association has made a demand for payment in a record and has simultaneously provided a copy of such record to the holder of a security interest described in subdivision (2) of subsection (b) of this section; and (C) the executive board has either voted to commence a foreclosure action specifically against that unit or has adopted a standard policy that provides for foreclosure against that unit."

[5] General Statutes § 47-258 (m) (2) provides: "Not less than sixty days prior to commencing an action to foreclose a lien on a unit under this section, the association shall provide a written notice by first class mail to the holders of all security interests described in subdivision (2) of subsection (b) of this section, which shall set forth the following: (A) The amount of unpaid common expense assessments owed to the association as of the date of the notice; (B) the amount of any attorney's fees and costs incurred by the association in the enforcement of its lien as of the date of the notice; (C) a statement of the association's intention to foreclose its lien if the amounts set forth in subparagraphs (A) and (B) of this subdivision are not paid to the association not later than sixty days after the date on which the notice is provided; (D) the association's contact information, including, but not limited to, (i) the name of the individual acting on behalf of the association with respect to the matter, and (ii) the association's mailing address, telephone number and electronic mail address, if any; and (E) instructions concerning the acceptable means of making payment on the amounts owing to the association as set forth in subparagraphs (A) and (B) of this subdivision. Any notice required to be given by the association under this subsection shall be effective when sent."

[6] On that same day, September 22, 2015, and subsequently on March 18, 2016, the defendants filed additional claims against other parties associated with the plaintiff. These claims and parties are not at issue in this appeal.

[7] General Statutes § 47-278 (a) provides: "A declarant, association, unit owner or any other person subject to this chapter may bring an action to enforce a right granted or obligation imposed by this chapter, the declaration or the bylaws. The court may award reasonable attorney's fees and costs."

[8] Practice Book § 61-4 (a) provides in relevant part: "This section applies to a trial court judgment that disposes of at least one cause of action where the judgment does not dispose of either of the following: (1) an entire complaint, counterclaim, or cross complaint, or (2) all the causes of action in a complaint, counterclaim or cross complaint brought by or against a party. . . . Such a judgment shall be considered an appealable final judgment <u>only if</u> the trial court makes a written determination that the issues resolved by the judgment are of such significance to the determination of the outcome of the case that the delay incident to the appeal would be justified, and the chief justice or chief judge of the court having appellate jurisdiction concurs. . . ." (Emphasis in original.)

[9] Only Marguerite filed the Practice Book § 61-4 (a) motion.

[10] Practice Book § 61-4 (b) provides in relevant part: "Within twenty days after notice of such a determination in favor of appealability has been sent

to counsel, any party intending to appeal shall file a motion for permission to file an appeal with the clerk of the court having appellate jurisdiction. The motion shall state the reasons why an appeal should be permitted. . . . The motion and any opposition papers shall be referred to the chief justice or chief judge to rule on the motion. . . ."

---